# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
Assigned on Briefs May 13, 2014

## KENNETH L. PEACHMAN v. STATE OF TENNESSEE

**Appeal from the Circuit Court for Montgomery County**
**Nos. 40700798, 40700817     Michael R. Jones, Judge**

---

**No. M2013-02171-CCA-R3-PC   Filed 06/06/2014**

---

The petitioner, Kenneth L. Peachman, appeals the denial of his petition for post-conviction relief, which challenged his 2007 Montgomery County Circuit Court guilty-pleaded convictions of second degree murder and solicitation of first degree murder, claiming that the ineffective assistance of his trial counsel rendered his guilty pleas unknowing and involuntary.[1]  Discerning no error, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the Court, in which JOHN EVERETT WILLIAMS and ROGER A. PAGE, JJ., joined.

Gregory D. Smith, Nashville, Tennessee (on appeal); and Dominic Leonardo, Nashville, Tennessee (at hearing), for the appellant, Kenneth L. Peachman.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel Harmon, Assistant Attorney General; John Wesley Carney, Jr., District Attorney General; and Helen O. Young, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

On July 17, 2007, the petitioner, originally charged with first degree premeditated murder, pleaded guilty to second degree murder and solicitation of first degree murder, and the trial court imposed a total effective sentence of 32 and one-half years'

---

[1]Although the petitioner included both convictions and case numbers in his original petition, very little mention was made of the petitioner's conviction of solicitation of first degree murder.  His claim regarding release eligibility percentage, in fact, has no application to that conviction.

incarceration. The petitioner's plea of guilty to second degree murder was "open," with no agreed sentence. He pleaded guilty to solicitation of first degree murder in exchange for a Range I sentence of eight years' incarceration. By operation of law, the petitioner must serve 100 percent of the 24 and one-half year sentence for his conviction of second degree murder. *See* T.C.A. 40-35-501(i)(2)(B). Following the entry of his pleas, the petitioner filed a motion to withdraw his guilty plea to second degree murder, claiming that he had been deprived of the effective assistance of counsel. *See State v. Kenneth L. Peachman*, No. M2008-01057-CCA-R3-CD, slip op. at 4-5 (Tenn. Crim. App., Nashville, Jan. 6, 2010), *perm. app. denied* (Tenn. May 12, 2010). Specifically, the petitioner alleged that his counsel provided him with inaccurate information regarding his release eligibility percentage, that counsel coerced him into entering his pleas, and that his plea was not knowingly and voluntarily entered as a result of the incorrect information he received regarding his release eligibility percentage. The trial court denied the petitioner's motion to withdraw his plea, and the petitioner appealed that decision to this court. *See id.* In our opinion affirming the ruling of the trial court, we observed that "the trial court informed [the petitioner] that . . . as a violent offender, [he] was required to serve one hundred percent of his sentence" and that the petitioner's trial counsel "had explained the length of time [the petitioner] must serve his sentence, and [the petitioner] agreed that he understood the terms of his plea." *Id.*, slip op. at 7-8.

On July 20, 2011, the petitioner filed a petition for post-conviction relief wherein he again claimed that he had been deprived of the effective assistance of counsel. Acknowledging the tardiness of his petition, which was filed more than one year after the final action of the supreme court, the petitioner claimed that due process principles required the tolling of the statute of limitations for filing a petition for post-conviction relief because the petitioner's retained counsel had failed to file a timely petition despite the petitioner's request that he do so. The petitioner attached to his petition a letter from his appellate counsel stating appellate counsel's promise to file a petition for post-conviction relief in the event of the supreme court's denial of the petitioner's application for permission to appeal this court's ruling affirming the denial of the petitioner's motion to withdraw his plea. The petitioner also attached letters that the petitioner had written to appellate counsel and to appellate counsel's partner inquiring about the status of his petition for post-conviction relief and a letter from the Montgomery County Circuit Court Clerk noting that no petition for post-conviction relief had been filed in the petitioner's case. Finally, the petitioner attached a letter from appellate counsel dated February 27, 2011, wherein appellate counsel suggested that it might be better for counsel to withdraw "and let [the petitioner] get appointed counsel to take over the matter." Appellate counsel also chastised the petitioner for communicating with counsel's law partner and for claiming that appellate counsel had refused to communicate with the petitioner.

On August 25, 2011, the post-conviction court appointed counsel to represent

the petitioner, and the petitioner's appointed counsel later filed an amended petition for post-conviction relief. In the amended petition, the petitioner reiterated his claim of ineffective assistance of counsel and added an allegation that, should the post-conviction court determine that any issue of ineffective assistance of counsel had been waived for failure to raise it earlier, then the court should conclude that appellate counsel performed deficiently by failing to raise the issue in the trial court or on direct appeal.

On August 9, 2012, the post-conviction court entered an order deeming the petitioner's petition timely filed. In January 2013, the court filed an order allowing substitute counsel to take over the petitioner's case, and substitute counsel filed another amended petition for post-conviction relief in April 2013. In that petition, the petitioner alleged that his trial counsel performed deficiently by, among other things, coercing him into entering his pleas and by failing to explain to him that he would be required to serve 100 percent of the sentence imposed for his conviction of second degree murder. The petitioner also alleged that appellate counsel, who was retained to represent the petitioner following his plea but before his sentencing, performed deficiently by failing to adequately explain the sentencing issues to him and by failing to meet with the petitioner before filing the appeal. The petitioner again claimed that principles of due process required the tolling of the statute of limitations.

At the August 6, 2013 evidentiary hearing, the petitioner testified that he met with trial counsel eight or nine times between the arraignment and the guilty plea submission hearing. He claimed that despite their numerous meetings, trial counsel did not relay the elements of the charged offenses, any possible defenses, or the bulk of the State's evidence against him. He said that trial counsel did not provide him with all of the discovery materials. The petitioner recalled that the State added a charge of solicitation of first degree murder on the day that he entered his pleas based upon information the State had received from recorded conversations between the petitioner and the petitioner's cell mate. The petitioner insisted that trial counsel told him about the additional charge "minutes" after it was filed and then told the petitioner that he "had to cop out today." The petitioner acknowledged that it was his decision to plead guilty, saying, "I felt it was best for me at the time."

The petitioner claimed that at the time he entered his plea of guilty to second degree murder, he believed that he would only be required to serve 30 percent of any sentence imposed. He asserted that this mistaken belief came from his discussions with trial counsel. The petitioner also claimed that his "plea paper . . . was marked in the box 30 percent." He acknowledged that the transcript of the guilty plea submission hearing showed that the trial court told the petitioner about the 100 percent service requirement, but he claimed that he had no independent recollection of that portion of the colloquy. He said that

he did not understand the 100 percent service requirement until his mother explained it to him after he had entered the plea. The petitioner maintained that he would not have pleaded guilty to second degree murder if he had known about the 100 percent service requirement.

During cross-examination, the petitioner agreed that his only complaint with regard to his guilty plea was that he did not understand the 100 percent release eligibility percentage. He added that he did not believe it to be fair that his "charge partner" received a sentence of eight years when he had received a total effective sentence of 32 years. The petitioner acknowledged that he rejected a plea offer that would have included a sentence of 15-20 years' incarceration. He said that counsel encouraged him to accept a plea offer because his chances at trial were not good.

Trial counsel testified that he did not have many specific recollections about the petitioner's case. He said that although he could not recall whether he had provided the petitioner with discovery materials, it was his practice "to make a complete copy of the discovery" exclusive of video and audio recordings, explaining that inmates are only allowed to have "the paper" portion of the discovery materials.

Trial counsel said that he never had any inkling that the petitioner might suffer from mental health issues or that the petitioner did not comprehend the charges. He said, "[T]here's a difference between being unhappy about something and understanding something." Trial counsel said that he had no specific recollection whether he had discussed the release eligibility percentage for second degree murder with the petitioner, but he noted that the transcript of the guilty plea submission hearing indicated that he did so.

The petitioner's mother testified that it was her belief that the petitioner did not understand that his sentence for second degree murder included a 100 percent service requirement. She also testified that she had "a complete" copy of "his whole discovery packet" that included "the CDs, the recordings with the investigators, right down to the young man's deceased body, God rest his soul, on the autopsy table" and that trial counsel gave those materials to her following the guilty plea.

At the conclusion of the hearing, the post-conviction court took the petition under advisement. The post-conviction court denied relief via written order, concluding that the petitioner had failed to establish his claims by clear and convincing evidence. With regard to the petitioner's claim that his guilty plea was not knowingly and voluntarily entered because he did not understand that his sentence for second degree murder carried with it a 100 percent service requirement, the post-conviction court ruled, exactly as it had when denying the motion to withdraw the plea, that "the petitioner knew at the time of his plea that his sentence would be within the range of 15 to 25 years and that he would be required to

-4-

serve it at 100%."

In this appeal, the petitioner again asserts that his pleas were not knowingly, voluntarily, or intelligently entered because counsel misinformed him regarding the release eligibility percentage for a conviction of second degree murder. He also asks the court, "If [the petitioner] and his original trial counsel were at odds prior to entering a guilty plea and [the petitioner] was not provided with all discovery, was the plea 'knowing'?" The State contends that the post-conviction court did not err by denying relief.

We view the petitioner's claim with a few well-settled principles in mind. Post-conviction relief is available only "when the conviction or sentence is void or voidable because of the abridgment of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A.§ 40-30-103 (2006). A post-conviction petitioner bears the burden of proving his or her allegations by clear and convincing evidence. *Id.* § 40-30-110(f). On appeal, the post-conviction court's findings of fact are conclusive unless the evidence preponderates against them. *Henley v. State*, 960 S.W.2d 572, 578-79 (Tenn.1997); *Bates v. State*, 973 S.W.2d 615, 631 (Tenn. Crim. App. 1997). By contrast, the post-conviction court's conclusions of law receive no deference or presumption of correctness on appeal. *Fields v. State*, 40 S.W.3d 450, 453 (Tenn. 2001).

To establish entitlement to post-conviction relief via a claim of ineffective assistance of counsel, the post-conviction petitioner must affirmatively establish first that "the advice given, or the services rendered by the attorney, are [not] within the range of competence demanded of attorneys in criminal cases," *see Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975), and second that his counsel's deficient performance "actually had an adverse effect on the defense," *Strickland v. Washington*, 466 U.S. 668, 693 (1984). In other words, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Should the petitioner fail to establish either deficient performance or prejudice, he is not entitled to relief. *Id.* at 697; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn.1996). Indeed, "[i]f it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, . . . that course should be followed." *Strickland*, 466 U.S. at 697.

When reviewing a claim of ineffective assistance of counsel, we will not grant the petitioner the benefit of hindsight, second-guess a reasonably based trial strategy, or provide relief on the basis of a sound, but unsuccessful, tactical decision made during the course of the proceedings. *Adkins v. State*, 911 S.W.2d 334, 347 (Tenn. Crim. App.1994). Such deference to the tactical decisions of counsel, however, applies only if the choices are made after adequate preparation for the case. *Cooper v. State*, 847 S.W.2d 521, 528 (Tenn. Crim. App. 1992).

The petitioner's claim that his guilty pleas were not knowingly, voluntarily, and intelligently entered because he had been misinformed regarding the release eligibility percentage for a conviction of second degree murder has been previously determined. *See* T.C.A. § 40-30-106(h) ("A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing. A full and fair hearing has occurred where the petitioner is afforded the opportunity to call witnesses and otherwise present evidence, regardless of whether the petitioner actually introduced any evidence."). The petitioner claimed, in his motion to withdraw his guilty plea, that his plea was not knowingly and voluntarily entered because he had been misinformed regarding the release eligibility percentage. Both the petitioner and trial counsel testified at the hearing on the motion, and the trial court denied the motion, concluding that the record showed that both counsel and the trial court had informed the petitioner regarding the 100 percent service requirement. The petitioner raised the same claim on direct appeal to this court, and we rejected it. *See Kenneth L. Peachman*, slip op. at 8.

The petitioner's claim that he and trial counsel "were at odds" would not, even if true, avail the petitioner of post-conviction relief. The petitioner does not point to any action or inaction by trial counsel that qualifies as deficient performance. Trial counsel testified that he provided the petitioner with all of "the paper" discovery materials but did not provide him with any audio or video recordings because the petitioner was not permitted to have those items in the jail. The petitioner could not point to any specific item that was not provided to him and that would have altered his decision to plead guilty.

Accordingly, the judgment of the post-conviction court is affirmed.

_____
JAMES CURWOOD WITT, JR., JUDGE